CASE No. 834.

TERRY v. CALNAN.

1. The charter of a bank contained this section: "That in case of the failure of said bank, each stockholder   *   *   *   shall be liable and held bound,

individually, for any sum not exceeding the amount of his shares." The bank suspended specie payments, but continued banking operations for more than four years longer. *Held*, that there was a failure within the meaning of the above-recited section when specie payments were suspended.

2. *Held further*, that an action against the stockholders for the additional liability imposed by this section, was barred by the statute of limitations in four years after the suspension.

3. This liability was a simple contract debt, and not a statute liability.

---

Before THOMSON, J., Richland, April, 1879.

Action commenced November 12th, 1870, by Harvey Terry against M. J. Calnan, receiver, and the stockholders of the Commercial Bank of Columbia. For a proper understanding of the questions decided by this court, the case is sufficiently stated in the Circuit decree, which is as follows:

This complaint was filed by the billholders against the receiver and the stockholders, for the purpose of having the assets in the hands of the receiver applied, as far as the same would avail, to the payment of the bills held by the plaintiffs, and of recovering the balance due on said bills from the stockholders, by reason of their liability under Section 4 of the charter of the bank. 12 *Stat.* 212.

This cause, after a hearing before the Circuit Court, was appealed to the Supreme Court, and by that court remanded, with directions for certain issues of fact to be first inquired into before the Circuit Court should decide the case upon its merits. One of these issues was the ascertainment of the date of the *failure* of the bank. The defendants, who are stockholders, having set up the defence of statute of limitations, the efficacy of which depends upon the date of the failure of the bank, applied for and obtained at a previous term of this court, an order for the referee to report upon the issue of the date of failure. The plaintiffs appealed to the Supreme Court from this order, and the appeal was not sustained.

The defendants now submit their case upon this one issue of the defence of the statute of limitation as depending on the date of failure of the bank. This defence, if sustained, would render

unnecessary all other inquiries as to facts, and also unnecessary the consideration of all other issues of law raised by the pleading. The referee reports " that the Commercial Bank of Columbia, S. C., suspended specie payments and failed on the 30th day of November, 1860, which fact, together with the evidence taken, is submitted."

To this report the plaintiffs except.

The cause then comes before me for a hearing, without a jury, on April 25th, 1879, upon the report of the referee, the exceptions thereto, and the defence of the statute of limitations set up by the defendants. The right of the plaintiffs to follow the assets of the bank in the hands of the receiver, is not questioned. After hearing the pleadings, the report of the referee, the exceptions thereto, and the argument of counsel for the plaintiffs and the defendants, I have arrived at conclusion as follows upon the issues submitted :

The section of the charter upon which the plaintiffs rely, provides—

" SECTION IV. That in case of the failure of said bank, each stockholder, copartnership, or body politic having a share or shares in such bank at the time of such failure, or who shall have been interested therein at any time within twelve months previous to such failure, shall be liable and held bound individually for any sum not exceeding twice the amount of his, her or their share or shares."

For the purpose of this decision, I assume that under this section the stockholders are liable to the billholders for the payment of the unredeemed bills held by them, whenever the stockholder had, or was interested in, shares as specified in the section quoted.

The first question to be considered is, when did the bank fail ? The referee reports that the failure occurred on November 30th, 1860, and bases his conclusion upon the fact that the testimony establishes that upon that date the bank suspended specie payment, or ceased to pay or redeem its bills with specie. The testimony reported fully establishes this latter fact, and is not disputed by the plaintiffs. The testimony further shows that the suspension was notorious, or, as one of the witnesses states,

"was known to everybody;" the bank never resumed, and after such suspension ceased issuing any of its own bills either for payment or in making loans. Hence, all the bills held by plaintiffs are bills which were issued by the bank, accompanied with the contract of its charter (or, as another court has held, with the contract impressed upon each bill,) that the bank would redeem or pay for such bills, specie, dollar for dollar. Now, upon November 30th, 1860, the bank ceased so redeeming its bills, and *failed* to make good its contract. Was not this the "failure" contemplated by Section 4? Our opinion is that a failure by the bank to fulfill any obligation or duty, or contract imposed upon it by law, is a failure in the contemplation of this section, rendering the bank or its stockholders liable, as provided in the section. The charter provides penalties to the state for certain of these failures. These penalties the state had a right to remit, and these penalties the general assembly did remit, but any liability incurred to billholders arising out of the contract made by the bank to redeem its bills with specie, the general assembly could not affect by any law it might enact without coming in conflict with Section 10, Article I., of the Constitution of the United States. The general assembly could remit penalties to the state; it could protect the bank from a forfeiture of its charter, but it could not impair the obligation of any contract made by the bank with its billholders.

I regard "failure" as the most comprehensive term that can be used in reference to a bank. A bank is *insolvent* when it is unable to pay its debts in the course of business; it is bankrupt when it fails to meet its business obligations, or does some act connected therewith declared by law to constitute bankruptcy; and either of the foregoing cases constitute a *failure*. Besides, a failure on the part of a bank to perform any contract made by it, or imposed by its charter, is a *failure;* although the bank might be able to perform such contracts, or might have done no act constituting technical bankruptcy. I therefore hold as a matter of law, that a suspension of specie payments by the Commercial Bank constituted, under its charter, a *failure*, within the meaning of Section 4. In my conclusion I am fully sustained by the reasoning and authorities cited in the decision of the

United States Supreme Court in the .case of *Godfrey* v. *The Merchants' Bank of Cheraw,* 7 *Otto.* This case was of a South Carolina bank, with a like charter to that of the Commercial Bank. That this suspension occurred on November 30th, 1860, there can be no doubt; and hence it must be concluded that the bank *failed* on that day.

The exceptions to the referee's report are, therefore, overruled, and the report is confirmed.

The next question to consider is, whether the defence of the statute set up by the defendants, who are stockholders, be a good defence in bar of the action. That the statute is a good defence, was held by a unanimous court in the case of *Carroll* v. *Green et al,* 2 *Otto* 510, where Justice Swayne, delivering the opinion of the court, fully considers a charter the same as that of the Commercial Bank, and all the statutes of limitation of this state, giving full force and effect to the suspension caused by our stay-laws, and the decision of our courts thereon. I concur in the reasoning of, and authorities cited in, that case, and hold that four years would bar the action. In this case the failure occurred on November 30th, 1860, and the action was brought on November 12th, 1870. More than nine years had run. From this deducting the five years' suspension caused by the stay-laws, would leave over four years that the statute had run before action was brought. The plea of the statute must, therefore, be held as a good defence for the defendants, who are stockholders.

It is urged that Section 132 of the code deprives the defendants of the right to avail themselves of the statute.

Whatever might be my view of the effect of that section, it is a sufficient answer to call attention to the fact that the cause of action in this case arose before the passage of the code, and hence, under Section 96, cannot affect this action.

It is, therefore, adjudged and decreed, that the complaint be dismissed upon the merits as to all the defendants who are sued in their capacity as stockholders, and that said defendants have judgment for their costs against the plaintiffs, the same to be taxed by the clerk of this court.

From this judgment the plaintiff appealed to this court.

*Mr. W. W. Montgomery,* for appellant.

*Messrs. J. H. Rion* and *F. W. McMaster,* contra.

March 20th, 1880.   The opinion of the court was delivered by

WILLARD, C. J.   The first question to be considered involves the nature of the liability of the stockholders of the Commercial Bank of Columbia, under the following section of the charter of said bank:

"That in case of the failure of said bank, each stockholder, copartnership or body politic, having a share or shares in such bank at the time of such failure, or who shall have been interested therein at any time within twelve months previous to such failure, shall be liable and held bound, individually, for any sum not exceeding the amount of his or her or their shares."

To whom was this liability intended to be incurred? Evidently to the bank or to its proper representative, which would include the receiver appointed upon its insolvency.   It certainly could not have been intended that each creditor of the bank, including billholders and depositors, should have a separate action against each stockholder individually.   The inconveniences of such a remedy is reason for not subjecting the language of the charter to such a construction when any other construction can be found reasonably to effectuate its intent and satisfy its expressions.   The language of the section quoted above contemplated liability in a single sum, to be measured in the manner pointed out by the act, and would, therefore, imply liability to a single action for the purpose of enforcing such demand.   The object of the provision was to make assets of the bank, in case of failure, for the payment of its debts.   A person subscribing for the stock of the bank at its original issue would be compelled to understand the effect of such subscription to be this: That he was absolutely bound to pay up the proportion of the capital represented by his stock, and an equal amount should it become necessary to make good the liability of the bank to pay its debts.   He would also understand that he could not discharge

himself of this contingent liability by merely selling and transferring his stock, although if the bank should continue to discharge its obligations for twelve months after such sale, then such contingent liability would cease. A subsequent purchaser of the stock would take it with the same contingent liability.

It is evident that the contingent liability is of the same nature with the primary liability to pay in the capital represented by the stock, and the inference would be that the payment was to be enforced by the same person—namely, by the bank itself. If anything remained unpaid on the original subscription, as where stock had not been paid up, the only way by which the creditor of the bank could reach the amount thus in arrear would be through the bank, by compelling the bank, or its representative, to call in the unpaid subscription as a debt due the bank. The contingent liability stands on the same footing. The stockholder was subjected to a contingent liabilty to the bank, such contingency being the failure of the bank. That event happening, he became the debtor of the bank in respect of stock presently held by him or held at any time within twelve months prior thereto, and the remedy was primarily in the hands of the bank. It was competent, through a creditor's bill, for the creditors of the bank to compel the bank to call in such assets, and for that purpose the creditor could lay hold of and exercise the remedy of the bank for that purpose, through the medium of a receiver; but the nature of the debt and remedy against the stockholder was not changed thereby.

Was the suspension of specie payments by the bank, in November, 1860, a failure within the sense of the statute? *Failure* means a failure to meet its current obligations at maturity. *Insolvency* looks to the liability to pay; *failure*, to the fact of payment. It is not necessary to say that the statute intended that *failure*, independently of insolvency, should fix the liability of the stockholders. All that need be said, for the purposes of the present case, is that failure was the outward act that was to stand for evidence that the bank was insolvent. If it should happen that the bank refused without justifiable cause to pay its current obligations at maturity, and had, notwithstanding such fact, sufficient assets to pay its indebtedness, the stockholder

would get the benefit of that part, for his liability depended wholly on insufficiency of assets. At the same time the creditors of the bank, and all others interested, would be justified in assuming that the failure of the bank was by reason of its insolvency.

The failure of the bank to pay its bills on presentation in specie was a failure to meet its current obligations at maturity, and, under the view we take of the statute, is presumptive evidence of insolvency. In the present case that presumption is not rebutted, but, on the contrary, it appears that the bank never did resume specie payments, thus strengthening the conclusion of its insolvency by another unrebutted presumption, namely—that the same cause that occasioned its original failure prevented resumption; that, is insolvency. This view supports the conclusion of the Circuit decree, that the cause of action had its origin in November, 1860.

The question of the operation of the statute depends upon the law as it then stood, making allowance for the suspension of the statute during the period of five years. The debt of the stockholder under this contingent liability must be ranked as a simple contract debt, barred by lapse of four years from the time the cause of action accrued to the commencement of an action for its enforcement. It is a mistake to call the liability of the stockholder a *statute liability.* The whole object of the provision of the charter was to regulate the relations that should arise between the corporation and its stockholders. The subscription to the stock was a voluntary act that might be performed or declined. The liability that arose from such subscription, although defined by the charter, arose as the voluntary contract of the parties. This is precisely what the law does in fixing the rate of interest on money as affecting contracts demanding interest, but not fixing the rate, and interest computed under the authority of the statute might as well be considered as representing a *statute liability* as the cause of action in the present case.

The decree correctly holds that the statute is a bar in the present case. The judgment appealed from must be affirmed and the appeal dismissed.

McIver and McGowan, A. J.'s, concurred.